PRYOR et al. v. CITY OF BUFFALO.

(Supreme Court, Trial Term, Erie County. August 24, 1908.)

1. VENDOR AND PURCHASER—TITLE OF VENDOR—CONDITION FOR REVOCATION.

Provision in a deed that, in case the grantor shall "not give good title and possession" to the whole or any part of the premises, then within a year the grantees, on a reconveyance, shall receive the entire purchase price, covers a right of way existing across the premises, and in use by a railroad, to the knowledge of all parties, but regarded by all but the railroad company as an unlawful encroachment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, § 255.]

2. RAILROADS—HIGHWAYS—RIGHT OF WAY.

The provision of the Constitution that the Legislature "shall not sell, lease or otherwise dispose" of canals does not prevent the Legislature giving the right to construct and operate a railroad across the canal, so as not to interfere with its use as a canal.

3. VENDOR AND PURCHASER—CONTRACT—GOOD TITLE AND POSSESSION.

There being a public canal, the Legislature granted a railroad a right of way across it, which it never attempted to revoke, alter, or modify. The Legislature then abandoned the canal and conveyed it to a city; it being filled up before or after the conveyance. Held, that the right of way was an incumbrance, entitling an individual to refuse to take the land under the contract of the city to give him "good title and. possession."

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, § 255.]

Action by Edward B. Pryor and others, individually and as trustees, against the city of Buffalo. Judgment for plaintiffs.

Moot, Sprague, Brownell & Marcy, for plaintiffs.

Louis E. Desbecker and Samuel F. Moran, for defendant.

MARCUS, J. The deed given by the city of Buffalo to the plaintiffs contains no covenants of title or quiet possession against incumbrances. It does contain an agreement providing for reconveyance and return of the purchase money in case of failure to give good title and possession. No point seems necessary to discuss, other than the effect of this agreement.

The plaintiffs contend, as a basis for their claim, that the city of Buffalo should be compelled to accept a reconveyance of the property in question on account of the provision contained in the deed as follows:

"It is mutually agreed and understood that, in case the party of the first part [city of Buffalo] shall not give good title and possession to the whole or any part of the premises, and of and to the rights and privileges herein set forth, then within twelve months from the date hereof the parties of the second part, upon a reconveyance of said premises, * * * shall receive the entire purchase price. * * *"

The tracks of the New York Central & Hudson River Railroad and its predecessors in interest occupied a portion of the premises conveyed for upwards of 50 years. At the time of the delivery of the deed by the city to the plaintiffs it was known by both parties that a right of way existed and was in use by the New York Central & Hudson River Railroad. What legal rights the railroad had in crossing the canal seem to have been a matter of doubt and uncertainty to all parties interested, other than the railroad itself, which strenuously insisted on its vested rights, and at all times during the negotiations which led to the sale served notice to that effect upon the city authorities.

We start, then, upon this inquiry, with the knowledge of both parties to the deed of the existence of the New York Central tracks over the canal admitted, and the same knowledge at the time negotiations for its purchase were commenced. The existence of a right of way of a railroad over the premises in question is such an easement as interferes with both title and possession. Does the fact that the plaintiffs knew at the time they accepted the deed of the existence of such right of way affect their contention? Must they be presumed to have made the purchase in reference thereto? Did they waive any rights they might have had to reject the title when they accepted the deed with knowledge of the existence of the incumbrance?

The city earnestly contends that the agreement to accept a reconveyance and return the purchase money, if it shall not give "good title and possession," is a conditional agreement, which is to become operative only on the happening of a subsequent event, or the ascertainment of something undetermined at the time of its execution, and that it in no way relates to a defect in title which was known to the parties at the time the deed was executed; further, that the agreement to refund becomes senseless if it is made to refer to a known defect, while as to unknown defects and incumbrances which the purchaser shall learn exist in the title intermediate the accepting of the deed and the time fixed for reconveyance it makes the agreement clear and forceful; in other words, that the agreement was not intended to cover known incumbrances. It is further urged that the agreement does not

provide that, if the city shall not give "good title and possession" within a year, the purchaser shall be entitled .to the purchase price; but that, if the city shall not give "good title and possession," then within a year the purchasers may reconvey. This is construed by the city to mean that if the city shall not by its deed, and at the time of giving the deed, give and convey to the purchasers a good title, the purchasers might inform themselves as to the nature of the title and determine whether or not·they shall retain the property, and in the meantime no duty of any kind with reference to the title rested upon the city.

The evidence clearly shows that all parties other than the railroad company regarded the tracks as an unlawful encroachment; but however it may have been regarded can in no way control the force and effect of the plain terms of the deed. The fact that the plaintiffs knew, at the time of the .delivery of the deed, of the existence of the right of way, does not alter, diminish, or nullify the provisions of the deed allowing them to reconvey in the event the city failed to give "good title and possession"; for it was because of plaintiff's knowledge of the existence of the incumbrance that it must be presumed they took the agreement against it, expecting to have it removed or to be protected against the same. It was likely inserted in the deed because the New York Central was claiming vested rights. The mayor deplored the change in his communication in which the sale was approved—providing that, in case the city "shall not give good title and possession" to the whole and every part of the premises, then within 12 months the plaintiffs, upon a reconveyance, should receive the entire purchase price, with interest—and stated he could see no "good reason why any agreement should have been made to pay them their money in any event." These conditions, no doubt, were further insisted on by the purchasers because the city itself modified its original advertisement or offer, after acceptance, so that the purchasers should bear all consequential damages resulting from changes in grade crossing structures. It was then that the "good title and possession" clause came into existence if the purchasers would complete the purchase upon the new terms proposed by the city, and that they might reconvey and receive back the purchase price if the city failed, for the purchasers originally bid $901,000 for a quitclaim deed containing no condition for the return of the money on account of the failure of title or otherwise. But, whatever may have been the reasons for giving the "good title and possession" agreement, the deed contained the agreement, and the plaintiffs had a right to rely upon it. It was the duty of the city to specially except the easement from the operation of the deed, instead of agreeing to give "good title and possession to the whole or any part of the premises," if it did not intend to remove it. The city advertised to sell, "free and clear of all liens and incumbrances." That was the effect of the agreement, notwithstanding the knowledge of the existence of the right of way by both parties to the deed. By the terms of the agreement contained in the deed the plaintiffs are entitled to "good title and possession," which means a title valid in fact, which this is not, since the tracks affect not only the

physical condition of the land, but affect and impair the title as well.

That 12 months were allowed in which to perfect title shows that something was to be done, or something left undone, that was known to both parties to the contract; otherwise, the agreement providing for reconveyance and return of purchase money in case of failure to give "good title and possession" is meaningless. The city was to do something in the 12 months. If it is said the plaintiffs were to do something, that would contradict the terms of the agreement contained in the deed. The effect of the agreement in the deed was to keep good for the period of 12 months the right of the purchasers to reject the property for defects in title or possession, notwithstanding the passing of the title and payment of the money. By the terms of the same deed it was agreed that, if such an event occurred, the plaintiffs should have their money returned upon a reconveyance of the property. The occupation of a portion of the premises by the New York Central under legislative authority constitutes such a material defect in title and failure to give possession as entitles the plaintiffs to a return of the purchase money under the terms of the deed. Any question regarding waiver by acceptance of the deed is entirely protected by the terms of the agreement contained therein. It is true there are no covenants in the deed; but there is an agreement or contract that "good title and possession" should be given purchasers. This agreement means something or nothing. The plaintiffs paid $901,000 for "good title and possession" to the whole and every part of the premises. They did not get what it was agreed they should have.

The constitutional provision referring to canals, that the Legislature "shall not sell, lease or otherwise dispose," is of no importance or consequence whatever in the determination of the question involved in this case. The construction and operation of a railroad across a canal may not injuriously affect in any way the free and unobstructed use of it for the purposes of navigation and transportation. There is no inconsistency or incompatibility between the two public uses. Both may well co-exist and be exercised at the same time. The power of the Legislature to authorize the construction of railroads over canals has never been questioned, no more so than the power to grant rights to cross navigable rivers or other streams or ordinary highways. The Legislature has never disturbed the New York Central in the full possession and enjoyment of its rights to cross the canal. The authority which granted it has never revoked it, and the conveyance by the state to the city never operated as an implied revocation. The conveyance was subject to whatever rights the Legislature had conferred or vested in the railroad company and which existed at the time the city received the title. The filling up of the ditch and the abandonment of the canal did not operate as a revocation of the rights of the railroad company; for the road had the same rights it possessed, whether the canal was filled up by the state or the city. In its conveyance to the city the state merely transferred its legal title to the lands, subject to the rights or burdens granted or imposed by itself.

Here, then, is a public canal. The Legislature granted the franchise of a right of way across it, and then abandoned the canal and conveyed it to a municipality. The state never attempted to revoke, alter, or modify the franchise in any way, but left it in full force and operation, unimpaired. The city entered into a contract to sell the land, and to give "good title and possession," free and clear of all incumbrances. The city expressly contracted to convey free of incumbrances, and, as the right of way is clearly an incumbrance, the plaintiffs under their contract are entitled to refuse to take the land.

A reference may be had to determine what, if any, damage has come to the lands during the occupation of the same by the plaintiffs, and to any other question of damage that defendants desire to urge; same to be settled by the court.